CARRA ADAMS, ADMINISTRATRIX OF THE ESTATE OF CHARLES FRANCIS ADAMS, DECEASED, AND J. H. CRAIN AND W. F. WILSON, EXECUTORS OF THE ESTATE OF R. E. LEE WILSON, DECEASED, PLAINTIFFS-RESPONDENT, v. THE OHIO NATIONAL LIFE INSURANCE COMPANY, A CORPORATION, AND THE BANKERS RESERVE LIFE COMPANY, A CORPORATION, DEFENDANTS-APPELLANTS.— 105 S. W. (2d) 64.

Springfield Court of Appeals.   April 23, 1937.

Rehearing Denied May 28, 1937.

*Oliver & Oliver* and *Jones, Hocker, Gladney & Jones* for appellants.

*Cecil Shane* and *Dearmont, Spradling & Dalton* for respondents.

SMITH, J.—This is a suit on an insurance policy.  We deem it unnecessary to set out any of the pleadings.  The appellants have made a very fair statement of the case, so much so that we set it out as follows:

"This is an appeal by the defendants, The Ohio National Life Insurance Company and The Bankers Reserve Life Company, from a judgment against them on a policy of life insurance issued by The

Bankers Reserve Life Company to and upon the life of Charles Francis Adams.

"The policy, a twenty-payment life policy for $5,000.00 was issued on December 29, 1922, and provided for the payment of an annual premium of two hundred thirty-four dollars and fifteen cents ($234.15) on the 29th day of December in each year during the lifetime of the insured or until twenty annual premiums had been paid.

"The policy was applied for and delivered at Oran, Missouri, where the insured resided.

"The beneficiary of the policy was the insured's estate.

"Following the issuance of the policy it was assigned by the insured to one R. E. Lee Wilson, as collateral security for a note or indebtedness owing by the insured to Wilson in the sum of five thousand ($5,000.00). The assignee died prior to the institution of this action.

"On or about the 21st day of April, 1933, The Bankers Reserve Life Company was consolidated with The Ohio National Insurance which assumed the obligations and liabilities of the former company.

"Pursuant to the right given him by the policy, the insured, on January 23, 1928, elected to pay the premiums on said policy quarter annually, in the sum of sixty-four dollars and seventy cents ($64.70), on the 29th day of December, March, June and September.

"It is admitted in the petition, and stipulated in the agreed statement of facts on which the cause was tried, that neither the insured nor the assignee of the policy nor anyone on their behalf paid or tendered to the defendants, or either of them, the premium of sixty-four dollars and seventy cents ($64.70) due under said policy on March 29, 1933.

"The insured died on March 26, 1934.

"On the 29th day of March, 1932, the Bankers Reserve Life Company made a loan to the insured and the assignee on the security of said policy in the sum of thirteen hundred dollars ($1300.00), which said loan was outstanding against the policy at the time of its lapse for the nonpayment of the premium due March 29, 1933.

"The policy provided that in the event of its lapse for the nonpayment of premiums, after three full years' premiums shall have been paid thereon, and if no other option had been selected by the insured, the company would, without any action on the part of the insured, apply the reserve of the policy computed on the American Experience Table of Mortality and $3\frac{1}{2}$ per cent interest, less any outstanding indebtedness thereon, to the purchase of paid-up insurance.

"It is stipulated in the agreed statement of facts that neither the insured nor the assignee of the policy, either prior or subsequent to the lapse of the policy, had made any demand upon defendants for

either the extended insurance or the cash surrender benefits provided for by the policy in the event of its lapse.

"It is further conceded that the reserve or cash value of the policy on March 29, 1933, computed on the American Experience Table of Mortality and 3½ per cent interest, amounted to $1,531.25 and that after deducting therefrom the outstanding loan or indebtedness of thirteen hundred dollars ($1300.00) the balance of the reserve or cash value standing to insured's credit was two hundred thirty-one dollars and twenty-five cents ($231.25).

"If this sum of two hundred thirty-one dollars and twenty-five cents ($231.25) was applied to the purchase of paid-up insurance, as provided by the terms of the policy, it would purchase paid-up insurance in the sum of three hundred and sixty-eight dollars ($368.00) which amount, with interest, has at all times been conceded to be due and owing by the defendant to the plaintiffs under the policy.

"The plaintiffs contend, however, that upon the lapse of the policy for the nonpayment of the premium due thereunder on March 29, 1933, the insured was entitled to have the cash value or reserve of the policy applied to continue the policy in force as extended insurance for its full amount, $5,000.00, in accordance with the extended insurance section of the Missouri Nonforfeiture Statutes; i. e., Sec. 5741, Revised Statutes Missouri 1929. If the plaintiffs' contention is correct, then the excess of the reserve or cash value of the policy on March 29, 1933, over the outstanding loan or indebtedness on the policy, amounting to the sum of two hundred thirty-one dollars and twenty-five cents ($231.25) whether applied on either the policy table (American Experience Table of Mortality with 3½ per cent interest per annum) or the statutory table (Actuaries or Combined Experience Table of Mortality with 4 per cent interest per annum), would have been sufficient to continue said policy in force for its full amount, five thousand dollars ($5,000.00), from the date of lapse to a date beyond the insured's death.

"The appellants contend, on the other hand, that the policy provided upon its lapse for its unconditional commutation for nonforfeitable paid-up insurance within the meaning of Sec. 5744, Revised Statutes Missouri 1929, and that, therefore, under the express provisions of that statute the extended insurance statute, Sec. 5741, Revised Statutes Missouri 1929, did not apply and the plaintiffs were only entitled to recover the sum of $368.

"Although on plaintiff's theory of the case the policy would have been continued in force for its full amount, $5000, to a date beyond the insured's death, the plaintiffs only prayed for judgment in the sum of three thousand dollars ($3,000.00). There was a finding and judgment in plaintiffs' favor for that amount and the defendants,

having unsuccessfully moved for a new trial, have brought the case here for review."

The respondents' statement shows they concede the correctness of appellants' statement with slight exceptions. We also quote respondents' statement, as follows:

"The respondents adopt the' statement of the appellants except as to the conclusion set out on page 3 of appellants'' brief, to the effect that:

" 'The policy provided that in the event of its lapse . . . the company would . . . apply the reserve of the policy . . . to the purchase of paid-up insurance.'

"We submit that the provision is as follows:

" 'After three full years' premiums have been paid hereon, upon default . . . the company, . . . will continue this Policy as a paid-up nonparticipating Whole Life Policy for the amount stated in the table on the first page hereof. . . .'

"We agree with appellants' statement that the sole question is whether or not the policy sued on provided upon its face for its unconditional commutation for nonforfeitable paid-up insurance within the meaning of Section 5744, Revised Statutes Missouri 1929, so as to prevent the application of the extended insurance statute, Section 5741, Revised Statutes Missouri 1929.

"We agree with the appellants' contention that if the policy in suit provided for unconditional commutation for nonforfeitable paid-up insurance, within the meaning of Section 5744, Revised Statutes Missouri 1929, then the judgment below is erroneous in amount. If, on the other hand, the policy sued on did not provide for its unconditional commutation for nonforfeitable paid-up insurance within the meaning of said Section 5744, Revised Statutes Missouri 1929, then the judgment should be affirmed."

It is very clear from these statements what the question is for our consideration. The appellants present this one point in the following language:

"The policy provided upon its lapse for its unconditional commutation for nonforfeitable paid-up insurance within the meaning of Section 5744, Revised Statutes Missouri 1929, and, therefore, the extended insurance statute (Sec. 5741, Revised Statutes Missouri 1929) did not apply."

The respondents say, "The policy sued on does not provide, in the event of its lapse, after three full years' premiums have been paid,' for its unconditional commutation for nonforfeitable paid-up insurance within the meaning of Section 5744, Revised Statutes Missouri 1929, and therefore, the extended insurance statute (Section 5741, Revised Statutes Missouri 1929) applies."

This case was presented to the trial court upon an agreed state-

ment of facts, and that court decided in favor of the respondents, and in due time the case was appealed to this court.

The appellants rely here on the following cases: State ex rel. Clark v. Becker, 73 S. W. (2d) 769 (Mo. Sup.); Dempsey v. John Hancock Mutual Life, 248 S. W. 17 (Mo. App.); Clark v. John Hancock Mutual Life, 176 Mo. App. 574; Columbian National Life v. Griffith, 73 F. (2d) 244 (C. C. A. 8th).

The respondents in order to sustain their contention rely on the following cases: Bothmann v. Met L. Ins. Co. (Mo. Sup.), 252 S. W. 652; Hickey v. Met. L. Ins. Co. (Mo. App.), 270 S. W. 388; Same case on certiorari, 297 S. W. 951; Ross v. Capitol L. Ins. Co. (Mo. App.), 228 S. W. 889, and Milburn v. Royal Union Mut. L. Ins. Co. (Mo. App.), 234 S. W. 378.

We have read carefully the above cases submitted by both sides, and have tried to note the nice distinctions in some of those cases. As we study these cases, and others, we have come to the conclusion that generally the meaning of the provisions of a policy of insurance is usually dependent upon the particularly worded provisions of the policy in each case under consideration by the court, and it is necessary to consider the terms of each policy in the light of the statutory provisions of this State.

In the instant case the controversy arises largely over the paragraph of the policy, which reads as follows:

"After three full years' premiums have been paid hereon, upon default in the payment of any subsequent premium, if the insured has selected no other option, the Company, without action on the part of the insured, will continue this policy as a paid-up nonparticipating Whole Life Policy for the amount stated in the table on the first page hereof, and purchasable by the reserve according to the American Experience Table of Mortality and three and one-half per cent interest, less not more than one per centum of the amount insured by this Policy. Any existing indebtedness to the Company hereon shall first be deducted from the reserve in determining the amount of paid-up insurance."

The amount "stated in the table on the first page" for which the policy will be continued is not in controversy here if this section of the statute controls. The amount is $368.

Much has been said by the courts as to the meaning of Sections 5741 to 5744, Revised Statutes 1929, Mo. Stat. Ann. pp. 4388 to 4394, and their applicability to certain policies. A clear statement thereof was made by our Supreme Court in the case of State ex rel. Clark v. Becker et al., 73 S. W. (2d) 769, at page 771, which we quote:

"(1) The three preceding sections (sections 5741-5743) prohibit the forfeiture of a life insurance policy after three premiums have

been paid, and provide a plan for using the accumulated value of the policy for further insurance. This statutory plan is for automatic temporary insurance of the amount of the face of the policy for a limited term. [Sections 5741 and 5743, Rev. St. 1929 (Mo. St. Ann. Sections 5741, 5743, pp. 4388, 4394).] It also establishes an optional provision for a reduced amount of insurance paid up for life which the policy holder may exercise by a demand within sixty days. [Section 5742, Rev. St. 1929 (Mo. St. Ann., Section 5742, p. 4393).] The plain purpose of Section 5744 is to give a policyholder some freedom to contract as he sees fit, rather than to hold him to the fixed statutory plan of only extended insurance as an automatic option, and therefore, to allow the policyholder to contract for an automatic option for cash surrender or for either kind of insurance; namely insurance for the full original amount paid up for a limited term or a reduced amount of insurance paid up for life. This seems clear from its present wording, and this meaning is confirmed by the wording of the original enactment of all four sections (Laws 1879, pp. 130, 131) and by the proviso later added to present section 5744. [Laws 1895, pp. 197, 198; Laws 1899, p. 248.] However, as well as granting the policyholder the right to choose his option, section 5744 prohibits a company from taking advantage of him by so wording the options that none of them will go into effect unconditionally, or so that there will be no provision for some kind of insurance which could not be forfeited. Therefore, if option A of the policy in question does, within the meaning of section 5744, contain a provision 'for the unconditional commutation of the policy for nonforfeitable paid-up insurance,' it satisfied the requirements of the statute and the other three sections are not applicable.''

We deem it unnecessary to quote section 5741 of the statutes, but section 5744, p. 4395, Mo. Stat. Ann., is as follows:

''SECTION 5744. FOREGOING PROVISIONS INAPPLICABLE, WHEN.

''The three preceding sections shall not be applicable in the following cases, to-wit: If the policy shall contain a provision for an unconditional surrender value, at least equal to the net single premium, for the temporary insurance provided for hereinbefore, or for the unconditional commutation of the policy for nonforfeitable paid-up insurance, or if the legal holder of the policy shall, within sixty days after default of premium, surrender the policy and accept from the company another form of policy, or if the policy shall be surrendered to the company for a consideration adequate in the judgment of the legal holder thereof, then, and in any of the foregoing cases, this article shall not be applicable: PROVIDED, that in no instance shall a policy be forfeited for nonpayment of premi-

ums after the payment of three annual payments thereon; but in all instances where three annual premiums shall have been paid on a policy of insurance, the holder of such policy shall be entitled to paid-up or extended insurance, the net value of which shall be equal to that provided for in this article. (R. S. 1919, Section 6154.)''

If we can ascertain from the reading of the paragraph of the policy together with the provisions of Section 5744, in the light of what our courts have said about these sections, we should reach a conclusion without having to extend this opinion much further. Considering the last part of this section first, we find that in no instance shall a policy be forfeited for non-payment of premiums after the payment of three annual payments thereon, but in all cases where three annual payments have been made the holder of the policy shall be entitled to paid-up or extended insurance. There is no controversy over the fact that in the instant case the three annual payments were made, and that the beneficiary was entitled to extended insurance or to a paid-up policy. The holder of the policy was entitled to one or the other of these privileges, but he was not entitled to both at the same time.

Section 5741 makes provision for extended insurance, but section 5744 in effect says, that Section 5741 shall not apply under certain conditions therein named. What are these conditions, and are they such with reference to the policy in this case, that they take the policy out of the provisions of Section 5741?

Does this policy contain a provision for an unconditional surrender value equal to the net single premium for the temporary insurance? If it does the provisions of Section 5741 do not apply. The paragraph of the policy above quoted says that after three annual payments, if the insured has selected no other option, the company will continue this policy as a paid-up non-participating Whole Life Policy for the amount stated on another page thereof. It is admitted that no other option was selected. It is also admitted that the reserve or cash value was sufficient to purchase paid-up insurance for the amount stated in the table within the policy. Since this policy says what it does, and since the statute says what shall be the effect if it contains such a provision, it seems that this provision alone would take it without the applicability of Section 5741.

The second provision of Sec. 5744 is the most difficult, and is the one about which the most has been written. This provision is that section 5741 and the succeeding two sections shall not apply if the policy shall contain a provision for "the unconditional commutation of the policy for non-forfeitable paid-up insurance." What do the words "unconditional," "commutation," "nonforfeitable," and "paid-up" mean? Fortunately for us they have been defined. We

read from Columbian Nat. L. Ins. Co. v. Griffith, 73 Fed. (2d) 244, at page 246; the court used this language: "Confining ourselves to the language of the policy and that of the applicable statutes of Missouri, we should unhesitatingly say that the policy. contained a provision for 'the unconditional commutation of the policy for nonforfeitable paid-up insurance.' In simple language 'commutation' means the substitution of one thing for another. 'Unconditional' means without conditions; 'paid-up insurance' means insurance which has been fully paid for; and 'nonforfeitable' means not subject to forfeiture."

It is interesting as to how the respondents treat the provisions of the paragraph of the insurance policy which we have quoted above. They quote in their brief and argument about half of the paragraph of the policy under consideration, and say, "It will be noted that the policy in the above automatic provision makes no mention of insurance. The word 'insurance' is not used, and there is no provision for nonforfeitable insurance. On the other hand, the policy provides that the policy be continued 'as a paid-up non-participating Whole Life Policy,' and, therefore, it follows that any insurance provided thereby, is such insurance as is provided under, by and through the policy as the same is continued."

We think a reading of the entire paragraph will show that it is not subject to the criticism given and the conclusion reached by the respondents. They try to distinguish between "paid-up insurance" and "paid-up policy." We think it is a distinction without a difference. We can not read the entire paragraph of the policy without concluding that the insurance company intended the two terms to mean the same, because a reference to the last sentence in the paragraph will show that the company uses the words "paid-up insurance." And regardless of how its use was intended, we must take the simple use of words and sentences to arrive at the meaning. We are unable to see any material difference in the meaning of the policy in the instant case from the meaning of the policy under consideration by the courts in the case of State ex rel. Clark v. Becker et al., 73 S. W. (2d) 769.

Without extending this opinion further, it is our conclusion that the judgment in this case was improper, and that the judgment should be reversed and the cause remanded to the circuit court with directions to enter judgment for the plaintiff in the sum of $368. We are basing this conclusion upon the Becker case, supra, 73 S. W. (2d) 769, and Columbian Nat. L. Ins. Co. v. Griffith, 73 Fed. (2d) 244. The judgment is reversed and the cause remanded for disposition in conformity with this opinion. *Allen, P. J.,* and *Fulbright, J.,* concurs.